IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHERMANE STUART )
)
v. ) NO. 3:06-1000
)
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVISON COUNTY, et al. )

TO: Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

By order entered October 24, 2006 (Docket Entry No. 3), this case was referred to the Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, for case management, for decision on all pretrial, nondispositive motions, for a report and recommendation on any dispositive motions, and to conduct any necessary proceedings.

Presently pending before the Court are motions to dismiss filed by Defendant Metropolitan Government of Nashville and Davidson County (Docket Entry No. 9), Defendant John Allison (Docket Entry No. 17), and Defendant Stephen Halford (Docket Entry No. 19). The Plaintiff has filed a response in opposition to each motion. See Docket Entry Nos. 16, 26, and 27. Set out below is the Court's recommendation for disposition of the motions.

## I. BACKGROUND

The Plaintiff filed this action pro se on October 16, 2006, against the Metropolitan Government of Nashville and Davidson County ("Metro"), Stephen Halford ("Halford"), who is the

Director-Chief of the Nashville Fire Department ("NFD"), and John Allison ("Allison"), who is a Captain with the NFD. The Plaintiff later filed an amended complaint (Docket Entry No. 5) against the same three defendants.

The Plaintiff is an employee of the NFD. She states that she has been employed by the NFD since September 1, 2004, and began working as a firefighter on February 28, 2005. She asserts that she has been subjected to working conditions within the NFD which are "illegal, intolerable, hostile, retaliatory, humiliating, [and] racially harrassive." See Amended Complaint, Docket Entry No. 5 at ¶ 1.

Specifically, the Plaintiff alleges that NFD captains made comments during her initial firefighter training which she perceived to be racially demeaning even though the comments were not overtly racial. Id. at ¶¶ 12-15. She also asserts that she "was treated as if she was invisible" at the first fire station to which she was assigned and "was treated like an outcast, being invisible and disrespected" and "had to work twice as hard as her Caucasian co-workers" at her second assigned fire station. Id. at ¶¶ 17-18. The Plaintiff was then transferred to Station #19 where she alleges her co-workers asked her private questions about her sex life. She contends that she reported the incident but no action was taken. Id. at ¶ 19.

The Plaintiff alleges that she was transferred to Station #1 in August 2005, and was told by a NFD chief that the transfer was to diversify that station. Id. at ¶ 21. While at Station #1, the Plaintiff alleges she was treated hostilely by her co-workers, that her gear was broken or stolen, and that a Barbie Doll was placed in her locker room. Id. at ¶¶ 22-23, 28, and 32. She alleges that she reported these incidents but nothing was done about them. During the fall of 2005, in response to the issue of male and female firefighters in common areas, locker room areas, sleeping quarters, and

restrooms, the Plaintiff was required to use a side door to enter and exit the sleeping quarters although the male firefighters did not have to use this door. Id. at ¶ 25.

The Plaintiff believes that the side door policy is both sexually and racially discriminatory. She contends that Defendant Halford was insensitive to her during a meeting about the matter, that the side door requirement was later made into a formal written policy, and that her locker was moved from the common area to the captain's quarters, which prevented her on one occasion from having access to feminine hygiene products that were in her locker. Id. at ¶¶ 26-27 and 29-31. On April 1, 2006, the Plaintiff was transferred to Station #7 and was required to continue to follow the policy regarding use of the side door. Id. at ¶ 32.

The Plaintiff alleges that she began seeking medical treatment on or about October 14, 2005, due to work related stress and was "out sick on doctor's order" from April 22 to October 9, 2006. Id. at ¶ 34. She asserts that, during the time she was not at work, Defendant Halford "relentlessly harassed" her and directed that she return to work without first obtaining a doctor's release order. Id. at ¶¶ 35-36.

The Plaintiff states that she filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") on or about January 18, 2005, and received a right-to-sue letter dated July 18, 2006.[1]

The causes of action set out in the Plaintiff's Amended Complaint are as follows:

1. Defendants are liable under 42 U.S.C. § 1983 for violating her civil rights "by retaliating and overtly, covertly harassing, and ridiculing Plaintiff because of her race." Id. at 12, Section VI.

---

[1] Although the right-to-sue letter is attached to the original complaint, the Plaintiff did not attach her EEOC charge of discrimination.

2. Defendants Halford and Allison violated 42 U.S.C. § 1985(3) by "directly and intentionally" making a "gender policy just for Plaintiff," violating her right to equal protection of the law. Id. at 12, Section VII.

3. Defendants violated 42 U.S.C. § 1986(3) by acting "in complete cooperation with one another in harassing, maligning, hostilely confronting, discrediting, undermining, retaliating and racially discriminating against Plaintiff," in violation of her civil rights and by failing to prevent a conspiracy against her. Id. at 13, Section VIII.

4. Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(3), by failing to protect Plaintiff from racial and gender harassment which created a hostile work environment. Id. at 13-14, Section IX.

5. Defendants are liable for intentional infliction of emotional distress under state law. Id. at 14, Section X.

6. Defendants are liable for negligent infliction of emotional distress. Id. at 14, Section XI.

7. Defendants are liable for intentional infliction of emotional distress under state law. Id. at 14-15, Section XII.

Plaintiff seeks compensatory and punitive damages.[2]

## II. MOTIONS TO DISMISS

Defendant Metro moves for dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of the Plaintiff's claim brought under 42 U.S.C. § 1986. Metro asserts that the Plaintiff's Section 1985(3) claim is brought against only Defendants Halford and Allison and does not include Metro. See Amended Complaint (Docket Entry No. 5) at 12, VII. As such, Defendant Metro argues

---

[2] In her responses in opposition, the Plaintiff asserts that her "claim is substantial and is based on federal law, namely, 42 U.S.C. §§ 1981, 1983, 1985, and 1986" and mentions Section 1981 again in the body of her responses. See Docket Entry Nos. 16, 26, and 27 at 2, 4. (The noted pages of the Plaintiff's responses, although separately filed, are identical.) However, the Plaintiff did not assert a cause of action under Section 1981 in her original or amended complaint.

4

that the Section 1986 claim should therefore be dismissed because the Plaintiff has not asserted an underlying claim against it under 42 U.S.C. § 1985, which is required for a Section 1986 claim.

Defendant Metro further argues that the Court should decline to exercise supplemental jurisdiction over the Plaintiff's state law claims, but if the Court does retain jurisdiction over the state law claims, the Plaintiff's claims for intentional infliction of emotional distress against Metro should be dismissed because Metro is entitled to sovereign immunity from such claims.

Defendants Allison and Halford seek dismissal, pursuant to Rule 12(b)(6), of all claims brought against them. Although they have filed separate motions, they make essentially the same arguments for dismissal. See Docket Entry Nos. 18 and 20. The two individual defendants assert that the Plaintiff fails to state a cognizable constitutional claim against them under either Sections 1983, 1985(3), or 1986, that they are entitled to qualified immunity from any damage claims even if the Plaintiff does state a claim under these sections, that they cannot be held individually liable under Title VII, and that the Court should decline to exercise supplemental jurisdiction over the Plaintiff's state law claims.

The Plaintiff filed separate responses in opposition, arguing that the Eleventh Amendment does not bar her claims, that her claims were timely filed,[3] and that the emotional distress and outrageous conduct of the Defendants caused her emotional and physical injury. See Docket Entry Nos. 16 and 26-27.

---

[3] The Defendants have not raised issues relating to the timeliness of the Plaintiff's claims.

5

## III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that dismissal is appropriate if it appears beyond doubt that the plaintiff can prove no set of facts in support of his alleged claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41 (1957); Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).[4] For the purpose of a motion to dismiss, the allegations of the plaintiff's complaint are liberally construed and taken as true and all disputes are resolved in favor of the plaintiff. Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). More than bare assertions of legal conclusions, however, are required to withstand a motion to dismiss, and the complaint must contain allegations of fact sufficient to support the asserted legal claims. See Scheid, 859 F.2d at 436-37.

## IV. ANALYSIS

A. Claims under 42 U.S.C. §§ 1985(3) and 1986

The Court finds that the Plaintiff's claims under Sections 1985(3) and 1986 warrant dismissal as to all defendants.

---

[4] In the context of an antitrust case, the United States Supreme Court recently held that the Conley "no set of facts" language had "earned its retirement," and that the factual allegations in the complaint must be the basis of a non-speculative claim for relief. Bell Atlantic Corp. V. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). However, in recent opinions entered after Twombly, the Court of Appeals for the Sixth Circuit has continued to provide the "no set of facts" standard and to cite cases that ultimately rely upon Conley. See Dixon v. Clem, __ F.3d. __, Nos. 06-5060/5468/5856/5857 (6th Cir. July 10, 2007) (recommended for publication; Brown v. Cassens Transport Co., No. 05-2089 (6th Cir. July 10, 2007 (recommended for publication). However, the Conley language should be, and has been tempered, by the requirement of Scheid that there must be allegations of fact sufficient to support the claims asserted.

42 U.S.C. § 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." To prevail on a Section 1985(3) claim, the Plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Vakilian v. Shaw, 335 F.3d 509, 518 (6th Cir. 2003) (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

The Plaintiff's Section 1985(3) conspiracy claim fails to state a claim upon which relief can be granted because the alleged co-conspirators are two employees of the same municipal fire department. As such, the Plaintiff's claim is barred by the intracorporate conspiracy doctrine. This doctrine provides that, when all of the defendants in a Section 1985 claim are members of the same collective entity whose acts are attributable to the entity itself, the separate actors necessary to form a conspiracy do not exist. See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ., 926 F.2d 505, 510 (6th Cir. 1991). Although the Plaintiff's complaint makes clear that Metro is not named in the Section 1985(c) claim, even if Metro had been specifically named as a defendant to this claim, the intracorporate conspiracy doctrine would likewise apply since Metro cannot conspire with its own agents or employees. See Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994).

7

The Plaintiff's failure to state a claim under Section 1985 against any of the defendants necessarily requires dismissal of her Section 1986 claim. Section 1986[5] creates a cause of action for a knowing failure to prevent wrongful acts pursuant to a conspiracy to interfere with a plaintiff's civil rights, as described in 42 U.S.C. § 1985. Braley v. City of Pontiac, 906 F.2d 220, 227 (6th Cir. 1990). It is settled law that, when a plaintiff has not stated a cause of action for an unlawful conspiracy under 42 U.S.C. § 1985, no cause of action can exist under Section 1986. See Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005); Braley, 906 F.2d at 227.

B. Claim under 42 U.S.C. § 1983

The Court finds that dismissal of the Plaintiff's Section 1983 claims is warranted as to the two individual defendants but that the claim should proceed as to Defendant Metro.

In its memorandum in support of its motion to dismiss, Docket Entry No. 10 at 3 n.2, Metro contends that the Plaintiff's complaint does not assert a claim against it under 42 U.S.C. § 1983. Metro bases this assertion on the fact that the heading of the Plaintiff's Section 1983 claim contains the statement "as to defendants in their individual capacities." See Amended Complaint, Docket Entry No. 5, at 12, § VI. While the heading for the Plaintiff's Section 1983 claim does suggest that the claim is directed at only the two individual defendants, the body of the claim specifically directs

---

[5] 42 U.S.C. § 1986 provides in relevant part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . .

8

the claim at the "defendants." Id. This wording contrasts with the Plaintiff's Section 1985 claim which is directed at only Defendants Halford and Allison and the use of "defendants" indicates that the Plaintiff's Section 1983 claim is directed at all of the named defendants. Id. at 12, § VII. Further, it appears from the Plaintiff's response that she intended to assert a Section 1983 claim against Metro. See Docket Entry No. 16, at 3, § III(A). Metro did not file or seek to file a reply to the Plaintiff's response to specifically address the Plaintiff's Section 1983 claims against Metro. Therefore, under these circumstances and at this point of the proceedings, the Plaintiff's Section 1983 claim against Metro should not be dismissed.

The Plaintiff's claim under 42 U.S.C. § 1983 against Defendants Halford and Allison is based on allegations that Halford and Allison retaliated, harassed, and ridiculed the Plaintiff because of her race and put her health and welfare at risk by stealing, breaking, and tampering with her equipment. See Amended Complaint, Docket Entry No. 5 at 12, § VI. She further alleges that they created working conditions so intolerable that another person in Plaintiff's position would have felt compelled to resign. Id.

The Court finds that the Section 1983 claim against Defendants Halford and Allison warrants dismissal. Plaintiff's factual allegations simply do not support a claim that these defendants violated her civil rights. Even the most generous reading of the amended complaint reveals that there are no factual allegations supporting Plaintiff's claims that either of the two defendants retaliated, ridiculed, or harassed her because of her race. Indeed, there is not a single allegation of conduct on the part of either defendants which is linked to an act that could be viewed as racial discrimination. To state a constitutional claim that her Fourteenth Amendment Equal Protection rights have been violated because of racial discrimination against her, Plaintiff must allege facts showing that the two

defendants acted "with a discriminatory intent or purpose." Charles v. Baesler, 910 F.2d 1349, 1356-57 (6th Cir. 1990). Conclusory allegations simply will not support a constitutional claim. See Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986); Smith v. Rose, 760 F.2d 102, 106 (6th Cir. 1985).[6]

C. Claim Under Title VII

Plaintiff's claims against Defendants Halford and Allison under Title VII are subject to dismissal for failure to state a claim because liability under Title VII may be imposed only against an entity which is an "employer" as defined by Title VII. See 42 U.S.C. § 2000e(b). The law in the Sixth Circuit is clear that Title VII does not impose liability against individuals, and a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII. See Little v. BP Exploration & Oil Co., 265 F.3d 357, 362 (6th Cir. 2001); Johnson v. University of Cincinnati, 215 F.3d 561, 571 (6th Cir. 2000); Wathen v. General Electric Co., 115 F.3d 400, 405-06 (6th Cir. 1997). Defendants Halford and Allison were clearly not Plaintiff's employer and she has not asserted any basis in her amended complaint for the imposition of liability against the two individual defendants under Title VII.[7]

---

[6] In light of the recommendation that the Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 against the individual defendants be dismissed for failure to state a claim, it is not necessary to address the two individual defendants' argument that they are entitled to qualified immunity.

[7] Defendant Metro does not seek dismissal of the Title VII claim.

10

D. State Law Claims

The Court should decline to exercise pendent jurisdiction under 28 U.S.C. § 1367 over the Plaintiff's claims for intentional and negligent infliction of emotional distress and these claims should be dismissed as to all defendants.

The Court does not have original jurisdiction over the Plaintiff's claims for intentional and negligent infliction of emotional distress under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1332 (diversity). Accordingly, jurisdiction over these state law claims exists only pursuant to the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a), which allows the Court to hear state law claims that are related to claims which invoke the Court's original jurisdiction.

However, 28 U.S.C. § 1367(c) gives the Court the discretion to decline to exercise supplemental jurisdiction over state law claims when:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the federal court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

District courts generally have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. See Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996) (citing Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit, 738 F.2d 163, 166 (6th Cir. 1984)), amended by, and reh'g en banc denied, 1998 WL 117980 (6th

11

Cir. Jan. 15, 1998). In determining whether to exercise this discretion, the Court must look to the state law claims raised by the Plaintiff.

The Plaintiff's claims of intentional and negligent infliction of emotional distress are governed by the law of the State of Tennessee. Under Tennessee law, claims against a governmental entity, such as Metro, and its employees must be brought in strict compliance with the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 et seq. The TGTLA removes the common law doctrine of sovereign immunity and permits a plaintiff to sue state governmental entities only in accordance with the provisions of the act. See Tenn. Code Ann. § 29-20-205; Crawley v. Hamilton County, 193 S.W.3d 453, 456 (Tenn. 2006).

While counties, municipalities, and other government entities generally enjoy immunity under the TGTLA, Section 29-20-205 of the Act waives this immunity for negligent acts of government employees under most circumstances. Exempted from this waiver are circumstances in which the injury in question arises out of certain acts, specifically "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2).

The body of law addressing the TGTLA sets out the following controlling principles:

1) when immunity from suit has been waived by the TGTLA, the governmental entity is the proper defendant to a claim, not the governmental employee whose conduct caused the injury, and the employee is immune from suit. See Tenn. Code Ann. § 29-20-310(b); Sallee v. Barrett, 171 S.W.3d 822, 826 (Tenn. 2005);

2) Section 29-20-205 of the TGTLA maintains the immunity of a governmental entity to claims of intentional infliction of emotional distress but lifts the protection of immunity and allows a governmental entity to be sued for claims of negligent infliction of emotional distress.  See Sallee, 171 S.W.3d at 829;

3) Section 29-20-307 of the TGTLA vests "exclusive original jurisdiction" over any action subject to TGTLA in the state circuit courts and a federal court should decline to exercise jurisdiction over such claims.  See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Buchanan v. Williams, 434 F. Supp. 2d 521, 533 (M.D.Tenn. 2006); Fromuth v. Metropolitan Gov't. of Nashville, Division County, Tennessee, 158 F. Supp. 2d 787, 789 (M.D.Tenn. 2001); Spurlock v. Whitley, 971 F. Supp. 1166 (M.D.Tenn. 1997), aff'd sub nom. Spurlock v. Satterfield, 167 F.3d 95 (6th Cir. 1999); Timberlake v. Benton, 786 F. Supp. 676 (M.D.Tenn. 1992); Beddingfield v. City of Pulaski, 666 F. Supp. 1064 (M.D.Tenn. 1987), rev'd on other grounds, 861 F.2d 968 (6th Cir. 1988).

These controlling principles require the dismissal of the majority of the Plaintiff's state law claims in the instant case.  Defendant Metro is immune under the TGTLA from the Plaintiff's two claims for intentional infliction of emotional distress and, although Defendant Metro is not immune from the Plaintiff's claim for negligent infliction of emotional distress under the TGTLA, this claim must be heard by the state courts.  The two individual defendants are shielded from suit on the Plaintiff's negligent infliction of emotional distress claim pursuant to the Section 29-20-310(b) of the TGTLA.

It would thus appear that only the Plaintiff's intentional infliction of emotional distress claims against the two individual defendants are even viable claims in a federal forum.  However,

13

the Court should decline jurisdiction over these claims in light of the fact that the Plaintiff's claim of negligent infliction of emotional distress against Defendant Metro must be heard in the state courts. Because of the similarity of these two claims, the Plaintiff's state law claims should be heard together in order to avoid piecemeal litigation. Furthermore, as set out supra, the Court has dismissed all claims against Defendants Halford and Allison for which original jurisdiction exists. For these reasons, the Court should decline to exercise supplemental jurisdiction over all of the Plaintiff's state law claims.

## R E C O M M E N D A T I O N

The Court respectfully RECOMMENDS that:

1) the motion to dismiss filed by Defendant Metropolitan Government of Nashville and Davidson County (Docket Entry No. 9), be GRANTED to the extent that the defendant seeks dismissal of the Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 and under state law,[8] and

2) the motion to dismiss of Defendant John Allison (Docket Entry No. 17) and Defendant Stephen Halford (Docket Entry No. 19) be GRANTED and these defendants be DISMISSED from the action.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District

---

[8] If this Report and Recommendation is adopted, the Plaintiff's claims under Title VII and 42 U.S.C. § 1983 against Defendant Metro will survive.

Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                      Respectfully submitted,

                                      _____
                                      JULIET GRIFFIN
                                      United States Magistrate Judge

15